The People of the State of New York, Respondent, v. Hugh B. Gillson, Appellant.

While it is for the legislature generally to determine what laws and regulations are needed to protect the public health and serve the public comfort and safety, and the exercise of its discretion in this respect is not the subject of judicial review, yet a statute, to be upheld as an exercise of the police power, must have some relation to those ends; the rights of property may not be invaded under the guise of a police regulation for the protection of health, when it is manifest such is not the object of the regulation.

The provision of the Penal Code (§ 335a, added by chap 691, Laws of 1887), prohibiting the sale or disposal of any article of food, or any offer or attempt to do so upon any representation or inducement that anything else will be delivered as a gift, prize, premium or reward to the purchaser, is unconstitutional and void. It is violative of the provision of the state Constitution (art. 1, § 6) securing to every person liberty and property unless he is deprived thereof by due process of law, and is not valid as a proper exercise of the police power of the state, or as a health law or regulation of trade in food, to prevent the adulteration thereof Nor is the said act a valid exercise of the legislative power to enact what shall amount to a crime.

(Argued April 9, 1888; decided June 5, 1888.)

Appeal from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made November 15, 1887, which affirmed a judgment of the Court of Special Sessions of the city of Albany, entered upon a verdict convicting defendant of a misdemeanor in violating section 335a of the Penal Code.

The material facts are stated in the opinion.

*Hamilton Harris, Henry E. Knox, John F. Montignani & Robert G. Scherer* for appellant. There is no analogy between defendant's business and the trade in intoxicating liquors. (*Bertholf* v. *O'Reilly*, 74 N. Y. 517; *Wynehamer* v. *People*, 13 id. 378; *Metropolitan Board* v. *Barrie*, 34 id. 657; *In re Jacobs*, 98 id. 113; Penal Code, § 323; *People* v. *Noelke*, 29 Hun, 462; Webster's Dict.; Worcester's Dict.; *Wilkinson* v.

*Gill,* 74 N. Y. 63; *Hull* v. *Ruggles,* 56 id. 424; 94 id. 141; *State* v. *Clark,* 33 N. H. 329; *Governors, etc.* v. *Am. Art Union,* 7 N. Y. 228; 13 Barb. 579; *State* v. *Shorts,* 32 N. J. 398; *Bell* v. *State,* 5 Sneed [Tenn.] 508; *Randall* v. *State,* 42 Tex. 580; *Wooden* v. *Shotwell,* 3 N. J. 470; *People* v. *Runge,* 3 N. Y. Crim. Rep. 85; *Chavanna* v. *State,* 49 Ala. 397; *Kohn* v. *Koehler,* 96 N. Y. 362.) If the prohibited acts or the transaction described in the evidence had any of the evil characteristics of lotteries or gambling, then defendant could have been indicted and convicted under the laws in force at the time the questioned statute was passed. (Penal Code, §§ 323, 324.) The effect of this statute is to oppress a certain class of citizen traders, and to improperly discriminate against them in their business, and thereby restrict, and so virtually prohibit their use of their own property. Practically, this also amounts to a prohibition of the industry discriminated against. (*Wynehamer* v. *People,* 13 N. Y. 396; 2 Com. 320, 326; *People* v. *Otis,* 90 N. Y. 48; *Pumpelly* v. *Green Bay Co.,* 13 Wall. 177; *In re Jacobs,* 98 N. Y. 98–105; *Bartmeyer* v. *Iowa,* 18 Wall. 129; *Munn* v. *Illinois,* 94 U. S. 141.) The legislature cannot, under the pretense of exercising the police power, or under any other claim or pretense, enact laws prohibiting harmless acts not concerning the health, safety or welfare of society, and the courts may examine into and annul such illegal legislation. (*I. W. & W. R. Co.* v. *Jacksonville,* 67 Ill. 37; *Coe* v. *Shultz,* 47 Barb. 69; *Quintini* v. *City of Miss.* [Sup. Ct.], 1 South. Rep. 625; *Town of Lake View* v. *Rose Hill Co.,* 70 Ill. 191; *Slaughter House Cases,* 16 Wall. 87; *Thorp* v. *R. R. Co.,* 27 Vt. 140; Cooley Const. Lim. [5th ed.] 446; *Lowry* v. *Rainwater,* 70 Mo. 152; *Peck* v. *Anderson,* 57 Cal. 251; *Stuart* v. *Palmer,* 74 N. Y. 183, 190, *Calder* v. *Bull,* 3 Dall. 386; *In re Ryers,* 72 N. Y. 1; *Weismer* v. *Village of Douglas,* 69 id. 91; *People* v. *Equitable Trust Co.,* 96 id. 387; *Rockwell* v. *Nearing,* 35 id. 302; *In re Townsend,* 39 id. 171; *In re Cem. Assn.,* 66 id. 569; *In re Eureka Co.,* 96 id. 42; *In re Jacobs,* 98 id. 98; *People* v. *Marx,* 99 id. 377.) Such legislation as

is attempted by the enactment of section 335a of the Penal Code is invalid, as subversive of rights of citizens guaranteed by the State and Federal Constitutions. (Fifth and Fourteenth Amendments of the U. S. Const.; State Const., art. 1, § 1; *Wynehamer* v. *People*, 13 N. Y. 398; *Boyd* v. *U. S.*, 116 U. S. 635; *Barbier* v. *Connolly*, 113 id. 31; *Yick Wo* v. *Hopkins*, 118 id. 356; *Liq. Cases*, 25 Kan. 765; *Butcher's Union Co.* v. *Cresent City Co.*, 111 U. S. 746; *Live Stock, etc., Assn.* v. *Crescent City Co.*, 1 Abb. [U. S.], 338, 339; *Bertholf* v. *O'Reilly*, 74 N. Y. 509, 515; *People* v. *Marx*, 99 id. 386; *Slaughter House Cases*, 16 Wall. 106; *Corfield* v. *Coryell*, 4 Wash. C. C. 380.) The constitutional rights of the citizen to life, liberty and property are wholly unlimited and unrestricted, except by considerations of the public good; and no abridgment or deprivation of the rights by the legislature will be upheld or enforced, except as a regulation of police, operating to the benefit of all individuals of the community, equally. (*People* v. *Marx*, 99 N. Y. 377; *In re Jacobs*, 98 id. 98; *Bertholf* v. *O'Reilly*, 74 id. 515; *Wynehamer* v. *People*, 13 id. 378; *Corfield* v. *Coryell*, 4 Wash. C. C. 380; Const. Lim. [4th ed.] 719; Potter's Dwarris on Stat. 458; *Austin* v. *Murray*, 16 Pick. 121, 126; *Watertown* v. *Mayo*, 109 Mass. 315, 319; *In re Chesebrough*, 78 N. Y. 232; *Bartmeyer* v. *Iowa*, 18 Wall. 129.) If a public benefit were intended by the legislature in passing this statute, it is so framed as to make it, in effect, a usurpation of the functions of the judiciary branch of the government. (Cooley on Const. Lim. [5th ed.] 446; *Lowry* v. *Rainwater*, 70 Mo. 152, *Jeck* v. *Anderson*, 57 Cal. 251.) Every presumption should lean towards the maintenance of the liberty guaranteed by the Constitution, and the individuals, as distinguished from the community, should have the benefit of every doubt. (1 Black. Com. 139; *Wynehamer* v. *People*, 13 N. Y. 398; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 177; *Liq. Cases*, 25 Kan. 765; *I. W. and R. R. W. Co.* v. *Jacksonville*, 67 Ill. 37; *Lake View* v. *Rose Hill Co.*, 70 id. 191; *Calder* v. *Bull*, 3 Dall. 386; *Boyd* v. *U. S.*, 116

U. S. 635; *Barbier* v. *Connolly,* 113 id. 31; *Yick Wo.* v. *Hopkins,* 118 id. 356.)

*Franklin M. Danaher* for respondent. The Penal Code being a state statute, without extra territorial effect, is neither limited nor controlled by the fifth amendment to the Constitution of the United States, nor does it deprive the defendant of either his liberty or his property without due process of law, within the meaning and intent of that amendment. (*The Anarchists' Case* [U. S. Sup. Ct.], 36 A. L. J. 450, 451.) It does not deprive any person of liberty or property without due process of law, within the meaning and intent of the fourteenth amendment. (*Slaughter House Cases,* 16 Wall. 36, 130; *U. S.* v. *Harris,* 106 U. S. 629, 644; *Civil Rights Cases,* 109 id. 3, 62; *Butchers' Union* v. *Crescent,* 111 id. 746, 766; *Patterson* v. *Kentucky,* 97 id. 339, 370; *Ex Parte Commonwealth of Virginia,* 100 id. 339, 370; *Davison* v. *Board,* 96 id. 97, 108; *U. S.* v. *Cruikshank,* 1 Woods, 316; 92 U. S. 542, 569; *Boston Beer Co.* v. *Mass.,* 97 id. 24, 34; *Barbier* v. *Connolly,* 113 id. 27, 32; *Mugler* v. *Kansas* [U. S. Sup. Ct.] 36 A. L. J. 525.) Nor does it abridge the privileges and immunities of citizens of the United States. (*U. S.* v. *Cruikshank,* 92 U. S. 542, 569; *People ex rel. King* v. *Gallagher,* 93 N. Y. 438; *U. S.* v. *Harris,* 106 U. S. 629, 644; *Bradwell* v. *Illinois,* 16 Wall. 130, 142; *Cory* v. *Carter,* 17 Am. [Ind.] 749; *Slaughter House Cases,* 83 U. S. 36, 130; *Mugler* v. *Kansas,* 36 A. L. J. [U. S. Sup. Ct.], 526.) It does not deprive any person within the state of the equal protection of the laws. (*Cory* v. *Carter,* 17 Am. [Ind.], 749; *People ex rel. King* v. *Gallagher,* 93 N. Y. 438; *Warts* v. *Hoagland,* 114 U. S. 606, 615; *Barbier* v. *Connolly,* 113 id. 27, 32; *Soon Hing* v. *Crowley,* Id. 703, 711; *Missouri* v *Humes,* 115 id. 512, 524.) It was a constitutional exercise of legislative power if chapter 691, Laws of 1887 (§ 335a of the Penal Code), is a law affecting the health, good order, morals or safety of society and within the police power of the legislature. (*Bertholf* v.

*O'Reilly*, 74 N. Y. 514; *In re Jacobs*, 98 id. 108; *Thorp* v. *R. R. Co.*, 27 Vt. 140, 149; *Stone* v. *Mississippi*, 101 U. S: 814, 821; *Boston Beer Co.* v. *Mass.*, 97 id. 501, 509; *Commonwealth* v. *Alger*, 7 Cush. 53; Cooley's Const. Lim. [5th ed.], 708; *Van Hook* v. *Selma*, 45 Am. 86; *Mugler* v. *Kansas*, 36 A. L. J. 527.) The act is a valid exercise of the police power as a statute in aid and furtherance of the prohibitions against lotteries in the state of New York. (*People* v. *Noelke*, 94 N. Y. 141; Penal Code, § 323; *Wilkinson* v. *Gill*, 74 id. 63; *Commonwealth* v. *Wright*, 137 Mass. 250; *Commonwealth* v. *Sullivan*, 15 N. E. 491; *Governors* v. *Am. Art Union*, 7 N. Y. 237, 238; Ency. Brittanica, title, "Lottery;" *Hall* v. *Ruggles*, 56 N. Y. 424, 426, 427; *Walker* v. *State*, 49 Ala. 396; *Dunn* v. *People*, 40 Ill. 465; *Thomas* v. *People*, 59 id. 160; *State* v. *Clark*, 33 N. H. 329, 335; *Eubanks* v. *State*, 3 Heisk. 488; *Skiff* v. *Johnson*, 57 N. H. 475; *U. S.* v. *Olney*, 1 Deady, 461, 465; *Randle* v. *State*, 42 Texas, 580; *Bell* v. *State*, 5 Sneed [Tenn.] 507; *Siedenbender* v. *Charles*, 4 S. & R. 151, 163; *Wooden* v. *Shotwell*, 3 Zabr. 470; *Negley* v. *Devlin*, 12 Abb. [N. S.] 210; *Stone* v. *Miss.* 101 U. S. 814, 821; *Butchers* v. *Crescent*, 111 id. 746, 752; *Phalen* v. *Virginia*, 8 How. [U. S.] 163, 168; *Charles* v. *People*, 1 N. Y. 181, 182; *People* v. *Sturdevant*, 23 Wend. 419; Const. N. Y., art. 1, § 10.) Section 335a of the Penal Code is a valid exercise of the police power in that it is a health law; a regulation of trade in food products to prevent dealing in impure, unwholesome and adulterated food. (*In re Jacobs*, 98 N. Y. 98, 110; *In re Marx*, 99 id. 377; *Wynehamer* v. *People*, 13 id. 412; *Stone* v. *Miss.* 101 U. S. 814, 821; *Bertholf* v. *O'Reilly*, 74 N.Y. 509; *State* v. *Burgoyne*, 40 Am. [Tenn.] 60; *Dabbs* v. *State*, 43 id. [Ark.] 275; *Davis* v. *State* 44 id. [Ala.] 128, 131; *People* v. *West*, 106 N. Y. 297; *Kibler's Case*, 106 id. 324.) Section 335a of the Penal Code is a valid exercise of the legislative power, because it is a law regulating trade and for the prevention of fraud and deception. (Tiedeman's Limitations on

Statement of case.

Police Power, 194, 207, 208, 292, 490; Cooley's Const. Lim. 718, 720, 721, 743, 744; *People* v. *Arensberg*, 105 N. Y. 123, 133; *People* v. *Wynehamer* 13 id. 378; *People* v. *Hawley*, 3 Mich. 330.) The act does not deprive the prisoner of his property nor of any of the rights or privileges secured to citizens of the State. (*Bertholf* v. *O'Reilly*, 74 N. Y. 521, 523; *Mugler* v. *Kansas* (U. S. Sup. Ct., Dec. 5, 1887), 36 A. L. J. 525; *People* v. *Wynehamer*, 13 N. Y., 378; *Bartemeyer* v. *Iowa*, 18 Wall. 129, 141; *Boston Beer Co.* v. *Mass.*, 97 U. S. 25, 34; *State* v. *Addington*, 12 Miss. App. 214, 224; *Pumpelly* v. *Green Bay Co.*, 13 Wall. 168; *People* v. *West*, 106 N. Y. 293.) The act does not interfere with the freedom of trade nor deprive the prisoner of any of the rights and privileges secured to citizens of this State. (Tiedeman's Police Power, 490, 491; *People* v. *Marx*, 99 N. Y. 386; *People* v. *West*, 106 id. 293, 296; *Bertholf* v. *O'Reilly* 74 id. 516.) All personal and property rights are held subject to the police power of the State. (*Boston Beer Co.* v. *Mass.*, 97 U. S. 25, 34; *Jacobs Case*, 98 N. Y. 108; *Phelps* v. *Racey*, 60 id. 10; *Maguer* v. *People*, 97 Ill. 335; *Barbier* v. *Connolly*, 113 U. S., 27, 32; *Davis* v. *State*, 44 Am. 128; *People* v. *Arensberg*, 105 N. Y. 123; *Patterson* v. *Kentucky*, 97 U. S. 501, 509; *Commonwealth* v. *Bearse*, 132 Mass. 542; *State* v. *Cate*, 58 N. H. 240; Cooley's Const. Lim. 726 740; 123 Mass. 372; 113 U. S. 27, 32; Id. 737 742; *Commonwealth* v. *Tewksbury*, 11 Met. 55; *People* v. *West*, 106 N. Y. 293; *People* v. *Kibler*, Id. 321; *Ex Parte Burnside* [Ct. App., Ken.] 37 A. L. J. 239; *Commonwealth* v. *Alger*, 7 Cush. 53; *Thorpe* v. *R. R. Co.*, 27 Vt. 140, 149; *Soon Hing* v. *Crowley*, 113 id. 27, 32; *Slaughter House Cases*, 16 Wall. 36, 130; *State* v. *Ah Chew*, 40 Am. 488; *Van Hook* v. *Selma*, 70 Ala. 361; *Burtemeyer* v. *Iowa*, 18 Wall. 129, 141; *People* v. *Hawley*, 3 Mich. 30; *Louisiana* v. *Fosdick*, 21 Am. [La.] 256; *State* v. *Burgoyne*, 40 Am. [Tenn.] 60; *State* v. *Dobbs*, 42 id. [Ark.] 275; *State* v. *Gurney*, 37 Me. 161; *St. Croix* v. *Comrs.*, 50 Conn. 329; *State* v. *Mugler*, 29 Kan. 252; 44 Am. 634; *Fertilizing Co.* v. *Park*,

97 U. S. 659; *Watertown* v. *Mayo*, 109 Mass. 315; *Board of Excise* v. *Barrie*, 34 N. Y. 516; *People* v. *Cipperly*, 37 Hun, 336; 101 N. Y. 634; *Stone* v. *Miss.*, 101 U. S. 814, 821; *License Cases*, 5 How. [U. S.] 504; *Mugler* v. *Kansas*, 36 A. L. J. 525.) Nothing but a clear violation of the Constitution, an undoubted usurpation of power prohibited, will justify declaring an act of the legislative department null and void. (*People* v. *West*, 106 N. Y. 295, 296; *United States* v. *Harris*, 106 U. S. 629, 644; *People* v. *Draper*, 15 N. Y. 543; *People* v. *Briggs*, 50 id. 553; *People* v. *Alberson*, 55 id. 54, 55; *Kerrigan* v. *Force*, 68 id. 385; *Bertholf* v. *O'Reilly*, 74 id. 509, 523; *People* v. *Comstock*, 78 id. 361; *Mugler* v. *Kansas*, 36 A. L. J. [U. S. Sup. Ct.] 527; *Stuyvesant* v. *Mayor, etc.*, 7 Cow. 606, 607; *In re Townsend*, 39 N. Y. 175; *People* v. *Smith*, 21 id. 597; *Brooklyn* v. *Armstrong*, 45 id. 244; *In re Dansville Cemetery Assn.*, 66 id. 572; *People* v. *Schuyler*, 79 id. 201; *People* v. *Cipperly*, 37 Hun, 325; 101 N. Y. 634; *In re Jacobs*, 98 id. 110; *People* v. *Kibler*, 106 id. 324; *Soon Hing* v. *Crowley*, 13 U. S. 737, 742; 98 N. Y. 115.)

PECKHAM, J. · In 1887 the legislature of this state enacted chapter 691, which is entitled "An act to amend the Penal Code, by adding an additional section thereto, to be known as section three hundred and thirty-five A." That section reads as follows:

"§ 335 A. No person shall sell, exchange or dispose of any article of food or offer or attempt to do so upon any representation, advertisement, notice or inducement that anything other than what is specifically stated to be the subject of the sale or exchange, is or is to be delivered or received or in any way connected with or a part of the transaction as a gift, prize, premium or reward to the purchaser. Any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and, in addition thereto, shall be liable to a penalty of twenty-five dollars, to be recovered, with costs, by any person suing therefor in his own name."

The section is placed as the last one in chapter 8 of the Penal Code, which is entitled " Lotteries," and the chapter is devoted to enactments defining and relating to lotteries.

On the 7th day of October, 1887, a purchaser of two pounds of coffee from defendant on the 6th day of October, 1887, at the sales-room of the Great Atlantic and Pacific Tea Company, No. 11 North Pearl street, in the city of Albany, made affidavit before a police justice of the city that the defendant " did, on the sixth of October, sell, etc., two pounds of coffee upon a representation that a thing other than what was specifically stated to be the subject of the sale, to wit. : Crockery and glass-ware was to be given and received, and in that way connected with and made part of the transaction as a gift or prize to the purchaser, and in that way defendant did sell the coffee upon such representation, and did deliver as a gift," etc., a tea cup and saucer to the purchaser of the coffee, who received it as part of the transaction of the sale of the coffee.

Upon such affidavit the justice issued his warrant and the defendant was arrested and brought before him. He then waived an examination and gave bail to the Special Sessions, where he was subsequently tried and convicted of the offense above charged. The defendant was sentenced to pay a fine of $10 or be imprisoned for ten days.

This conviction was affirmed at the General Term of the Supreme Court, and from the judgment of affirmance the defendant appeals to this court. A reference to the testimony on the trial discloses the fact that the witness did not buy the coffee for his own use, but in order to make a case against the tea companies, hence the certainty observable in the testimony of the witness as to the inducements which operated upon his mind and led him to purchase the coffee. The witness said in his evidence that he knew defendant, and that he was a clerk at premises No. 11 North Pearl street in the city of Albany, which were used and occupied as a tea store, and that on October sixth the witness purchased of defendant at that place and defendant sold him two pounds of coffee " upon a representation, advertisement, notice and inducement that a thing other

than the said coffee, which was specifically stated to be the subject of said sale and exchange, "to wit, one decorated cup and saucer was to be given, presented, delivered and received, and in that way connected with and made part of the transaction of the purchase and sale of the coffee, as a gift, prize, premium and reward to me," and upon such representation he purchased and received the coffee and the cup and saucer. He further said he would not have purchased the coffee but for the inducement of the present; that it was stated to him if he purchased but one pound of coffee he got a check, and when he purchased two pounds he got two checks which entitled him to a present, and he would have bought but one pound if he could have got a present with one. It also appeared that the articles which formed the inducement for the purchase were lying in full view of the purchaser on a counter, and his choice of anything on the counter was given him, provided he purchased as much as two pounds of coffee; that being the sole consideration upon which his right of choice depended. The witness further testified that there were two signs in front of the store, one was a business sign reading "Great Atlantic and Pacific Tea Company," the other "try our eight o'clock breakfast coffee, checks given away with this coffee." This was substantially the testimony, and it was uncontradicted. Upon these facts the courts below have pronounced the defendant guilty of a violation of the above mentioned act, and it has been held a valid exercise of legislative power.

The act is attacked by the counsel for defendant as unconstitutional upon a number of grounds. In considering constitutional questions certain rules have been laid down by courts in relation to the exercise of their conceded power to declare void, as being in violation of the Constitution, enactments of the legislature which have been passed with all due and proper formalities. It has been frequently held, and is acknowledged by all courts as the undoubted and true rule, that a statutory enactment will not be declared unconstitutional, and therefore void, unless a clear and substantial conflict exists between it

and the Constitution. It has been further held that every presumption is in favor of the constitutionality of legislative acts; that the case must be practically free from doubt before an act of the legislature should be declared unconstitutional; that as to our state Constitution the question whether a statute is a valid exercise of legislative power is to be determined solely by reference to constitutional restraints and prohibitions; that it may not be declared void because a court may deem it opposed to natural justice and equity; that all property is held subject to the general police power of the state to so regulate and control its use in a proper case as to secure the general safety and the public welfare. These principles have been frequently asserted in our courts and are so familiar that a reference to particular authorities is not thought needful. They are good and healthful rules and should be followed by all courts.

At the same time it must be remembered that the Constitution is the supreme law of the land, and that when an act of the legislature properly comes before the court to be compared by it with the fundamental law, it is the duty of the court to declare the invalidity of the act if it violate any provision of that law.

The defendant here appeals for his protection to the clause, among others, in the Constitution which provides that no person shall be deprived of life, liberty or property without due process of law. The meaning of this provision in our state Constitution has frequently been the subject of judicial investigation, and this court has had occasion, very recently, to discuss it in quite a number of cases, and a further elaboration is not needed.

The following propositions are firmly established and recognized; a person living under our Constitution has the right to adopt and follow such lawful industrial pursuit, not injurious to the community, as he may see fit. The term "liberty" as used in the Constitution is not dwarfed into mere freedom from physical restraint of the person of the citizen as by incarceration, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such

restraints as are necessary for the common welfare. Liberty, in its broad sense, as understood in this country, means the right not only of freedom from servitude, imprisonment or restraint, but the right of one to use his faculties in all lawful ways to live and work where he will, to earn his livelihood in any lawful calling and to pursue any lawful trade or avocation. These principles are contained and stated in the above language in various cases, among which are *Live Stock Association* v. *Crescent City, etc., Co.* (1 Abb. [U. S.] 388, 398); *Slaughter House Cases* (16 Wall. 36, 106); *Matter of Jacobs* (98 N. Y.) 98; *Bertholf* v. *O'Reilly* (74 id. 509); *People* v. *Marx* (99 id. 377).

It is quite clear that some or all of these fundamental and valuable rights are invaded, weakened, limited or destroyed by the legislation under consideration. It is evidently of that kind which has been so frequent of late, a kind which is meant to protect some class in the community against the fair, free and full competition of some other class, the members of the former class thinking it impossible to hold their own against such competition, and therefore flying to the legislature to secure some enactment which shall operate favorably to them or unfavorably to their competitors in the commercial, agricultural, manufacturing or producing fields. By the provisions of this act a man owning articles of food which he wishes to sell or dispose of is limited in his powers of sale or disposition. A liberty to adopt or follow for a livelihood a lawful industrial pursuit, and in a manner not injurious to the community, is certainly infringed upon, limited, perhaps weakened or destroyed by such legislation. It is certainly lawful to sell (as in this instance) coffee. It is an article of food and is now almost one of the necessaries of life to a large number of people. A person engaged as a retailer of coffee might very well think that he could greatly enlarge the amount of his trade by doing precisely what was done by the defendant in this case, and that while his profits on the same amount of coffee sold would be smaller than if he gave no present, yet by the growth of his trade his income at the end of the year would be more than by the old method. This statute, if valid, steps in to prevent

his adopting such a course to procure trade, and from it to secure an income and livelihood for himself and family. He is thus restrained in the free enjoyment of his faculties, which he ought to have the right and liberty to use in the way of creating or adopting plans for the increase and growth of his trade, business or occupation, unless such restraint is necessary for the common welfare. This law interferes with the free sale of food, for the condition is imposed that no one shall sell food and at the same time, and as part of the transaction, give away any other thing. It is not material if by reason of the prohibition the owner's sales of food are greatly cut down and his ability to support his family thereby perhaps largely decreased. If the law is valid, the fact of its existence is a complete answer to the complaints of the owner of food, that his liberty to sell his property and his chance to make a livelihood are very greatly impaired.

It cannot be truthfully maintained that this legislation does not seriously infringe upon the liberty of the owner or dealer in food products to pursue a lawful calling in a proper manner, or that it does not, to some extent at least, deprive a person of his property by curtailing his power of sale, and unless this infringement and deprivation are reasonably necessary for the common welfare, or may be said to fairly tend in that direction or to that result, the legislation is invalid as plainly violative of the constitutional provision under discussion.

This brings us to the consideration of the question whether the act is valid as a proper exercise of what is, by way of classification, called the police power of the state. That power has never yet been fully described nor its extent plainly limited further, at least, than this; it is not above the Constitution, but it is bounded by its provisions; and if any liberty or ·franchise is expressly protected by any constitutional provision it cannot be destroyed by any valid exercise by the legislature or the executive of the police power. The extent of this power has been the subject of discussion in this court, and in the recent and most important case of *In re Jacobs* (98 N. Y. 107), the question was examined and most

exhaustively reviewed by EARL, J., in his opinion   To re-open the subject now would be useless, and I refer to that case as authority for the statement that the legislature cannot, without reason and arbitrarily, infringe upon the liberty or the property rights of any person within the protection of the Constitution of this state; and that if the legislature shall determine what is a proper exercise of its police power, its decision is subject to the scrutiny of the courts   The subject was again reviewed in the *People* v. *Marx* (99 N. Y. 377), in an opinion written by RAPALLO, J., and concurred in by the whole court.

In the *Jacobs Case* (*supra*) this court held the tenement-house cigar act (so-called) unconstitutional, and in the *Marx Case* (*supra*) the section of the act relating to the manufacture and sale of oleomargarine, which absolutely prohibited its manufacture and sale, was also held unconstitutional, inasmuch as it prohibited an important branch of industry, not injurious to the community and not fraudulently conducted, solely for the reason that it competed with another branch. Under an exercise of the police power the enactment must have reference to the comfort, the safety or the welfare of society, and it must not be in conflict with the Constitution. The law will not allow the rights of property to be invaded under the guise of a police regulation for the protection of health, when it is manifest such is not the object and purpose of the regulation   (See *Austin* v. *Murray*, 16 Pick. 121, 126; *Com.* v *Alger*, 7 Cush. 53, 84, cited with approval in *Matter of Jacobs, supra.*)   As is also said in the last case, it is generally for the legislature to determine what laws and regulations are needed to protect the public health and serve the public comfort and safety, and if its measures are calculated, intended, convenient or appropriate to accomplish such ends, the exercise of its discretion is not the subject of judicial review.   But those measures must have some relation to these ends.   Courts must be able to see, upon a perusal of the enactment, that there is some fair, just and reasonable connection between it and the ends above mentioned.   Unless such

relation exist the enactment cannot be upheld as an exercise of the police power.

The learned counsel for the People claims that the act is a valid exercise of the police power, in furtherance of the policy of the state to prohibit the setting up of lotteries and the sale of lottery tickets. A careful reading of the statute fails to show any such purpose. It prohibits the seller of food from giving away any other thing as part of the transaction of sale, and as an inducement leading to it. It says nothing as to any lottery, and does not confine its prohibition to the giving away or distribution of any other article of property by virtue of any scheme founded upon chance. The act, in effect, absolutely prohibits the giving away of any other thing with the food sold and as part of the transaction of sale, wholly regardless of the means used to effect the giving away or delivery of such other article

The proof in this case shows there was no lottery or pretense of lottery in the transaction upon which the defendant was convicted of a violation of the act. There was not the slightest element of chance in the case. A counter had upon it various articles of crockery, all of which were in full view of the purchaser at the time he purchased the coffee in question. He was told that he could have any of those articles on that counter, to be picked out by himself, if he purchased two pounds of the coffee mentioned. To call such a transaction a lottery, or the checks given with the coffee a sale of lottery tickets, is to wholly ignore the true nature and character of a lottery, and also of this transaction. In this scheme the purchaser not only gets what he pays for, but by the very terms of the contract he has no chance to obtain anything more. In the purchase of two pounds of coffee he purchases the right to choose a certain article of crockery from a counter in full view, and he gets no chance to obtain anything else. In all cases cited by the counsel in his very elaborate and painstaking brief not one case is found where it has been held that a lottery or anything in the nature of a lottery existed, unless there was added to the right to obtain

some kind of property, in any event, the chance, near or remote, of getting something in addition to it, of more or less value as the case might be. Here there is no chance, and consequently nothing in the nature of a lottery, and the act cannot be upheld on the theory mentioned.

It is further argued, however, that the act is valid as a health law, a regulation of trade in food and to prevent dealing in impure, unwholesome and adulterated food. The same principles apply here as have already been stated, *i. e.*, there must be some fair and reasonable relation of means to end, which courts can see and admit the force of. We think it clear there is no such relation here. We think the act has not the slightest tendency to accomplish the alleged purpose.

The legislature has undoubted power to prohibit the adulteration of food, and it has already exercised it by the passage of section 407 of the Penal Code, and other laws upon the same general subject. The reasoning of counsel for the People is based upon the theory that no one will sell, as a matter of permanent business, an article at a price below what it costs him to procure it, and if he sell his coffee (in this instance), as low as the price thereof with other dealers, when he adds a gift at the time of the sale, he thereby reduces his profits below that of his competitor, and in order to prevent such a loss he will necessarily and inevitably sell an inferior or adulterated article. We think the reasoning is not sound. As has been before remarked, the inducement to purchase by reason of the gift may be so great that the sales are enormously increased, and the net profits at the end of the year may be greatly in excess of those of a dealer who makes no gifts and sells a correspondingly less amount of the food. It may simply be the old story of a small profit on large sales instead of a large profit on small sales.

There is no allegation here nor any proof that the coffee sold was, in fact, an adulterated article. There are statutes now existing which would reach that difficulty, and it can, therefore, the more readily be seen that, in truth, the object and purpose of this act were not to prevent the adulteration

of food, but that, in reality, it was passed for the purpose of protecting those dealers in food articles who preferred not to engage in this kind of business in connection therewith, and who, therefore, desired to prevent anyone else from engaging in it.

I lay no stress whatever upon the argument that this kind of transaction naturally induces people to purchase more than they want of any article of food in order to get the other article with it which comes to them in the shape of a gift, and thus the poorer people are led to extravagance in outlay. It may be remarked that in purchasing articles of food, even if one purchase more than is then absolutely necessary, the food need not be and, in all probability, is not wasted. But, aside from that, the argument is directed to that class of sumptuary legislation which, while good enough in some phases, is, when carried to minute details, simply unauthorized and illegal.

The right to legislate upon the subject of intoxicating liquors is acknowledged by every one, and is founded upon the fact that their use in excessive quantities leads, in large masses of cases, to crime, poverty and enormous suffering, and bears most harmfully upon the sum of the happiness of the human race. So in regard to lotteries in general. A wide spread custom of indulgence in the purchase of tickets leads, among the poorer classes certainly, and also among others, to habits of recklessness, waste and idleness; it cultivates a gambling spirit and tends to a hatred of honest labor, and to a desire to obtain riches or money without the necessary expenditure of industrious energy. Many other instances could be given where the interference of the legislature with the personal liberty of the citizen would be at once regarded as proper or, at least, legal under the exercise of the police power. But there is a limit to such interference in my judgment, and there does come a time when the constitutional provision, so often herein quoted, steps in to protect the citizen.

As an act in furtherance of the public health or morals, no one at this period of the history of man would, I think,

regard it as legal to enact in this state (changing the verbiage to suit the altered condition of the race in this country), that no man or woman under the rank specified in the law should thereafter wear fur on his or her clothes, or that no knight under the degree of a lord should wear shoes or boots having pikes in them more than two inches long. A British parliament enacted such measures to prevent, as was alleged, undue expenditures, and for the preservation of the morals of the people. (See 11 Edw. 3, chap. 1, A. D. 1337, and 3 Edw. 4, chap. 5, A. D 1463.) Numberless statutes of a similar nature have been passed both in England and in this country, and it is generally admitted that some of the best legislation of both countries has been found in the repeal of laws enacted by former parliaments and legislatures.

It seems to me that to uphold the act in question upon the assumption that it tends to prevent people from buying more food than they may want, and hence tends to prevent wastefulness or lack of proper thrift among the poorer classes, is a radically vicious and erroneous assumption and is to take a long step backwards and to favor that class of paternal legislation, which, when carried to this extent, interferes with the proper liberty of the citizen and violates the constitutional provision referred to. Equally unfounded, and for practically the same reasons, is the assumption that the law is valid as a law regulating trade and for the prevention of fraud and deception. It has no tendency to prevent either, and its regulation of trade is a mere arbitrary, unreasonable and illegal interference with the liberty of the citizen in his pursuit of a livelihood by engaging in a perfectly valid business, conducted in a perfectly proper manner. That a man engaged in trade will not for any length of time continue to sell an article below what it costs him to procure it is a safe assumption, while it is equally safe to say that he may do so for a time, long enough to enable him to introduce his article to the notice of the public and to create a demand for it which he will make a profit by supplying; or he may make a profit by supplying one article which will amount to enough to enable him to

give away some other article with it and permit him to receive the average rate of profit in the business which he is engaged in. To prevent this by legislative action does not reasonably or fairly tend to prevent fraud or deception in the sale of articles of food. As I have said, there are now laws enough on that subject, or if not, any law which has that end in view, and which naturally or reasonably tends to accomplish it, will undoubtedly be a valid exercise of the legislative power, and, of course, would be so declared by any and all courts.

Nor can this act stand as a valid exercise of legislative power to enact what shall amount to a crime. The power of the legislature to so declare is exceedingly large, and it is difficult to define its exact limit. But that there is a limit even to that power under our Constitution we entertain no doubt, and we think that limit has been reached and passed in the act under review. The power has been unlawfully exercised in this instance for the same reasons that we have already stated, because it violates the constitutional provision which secures to each person in this state his liberty and property, except as he shall be deprived of one or both by due process of law.

The principles upon which enactments, relating to the adulteration of food or the sale thereof below a certain standard declared by the legislature, have been upheld afford no aid to this act. Such laws have been plainly appropriate to secure the end in view, which was itself legal and commendable. They had direct relation to the public health and a direct and plain tendency to aid in the securing of it, and to prevent fraud and deception in the manufacture or sale of different articles. Such are the cases of *People* v. *Arensberg* (105 N. Y. 123); *People* v. *West* (106 id. 293); *People* v. *Kibler* (106 id. 321); *People* v. *Cipperly* (101 id. 634); *Same Case* (37 Hun, 319, 324), and numerous other cases.

The case of *Powell* v. *Commonwealth*, just decided by the Supreme Court of the United States (not yet reported), which affirms the judgment of the Supreme Court of Pennsylvania, reported in 114 Pennsylvania State Reports, 265, has been called

to our attention.   The question arose in that case as to the constitutionality of an act of the legislature of Pennsylvania (P. L. 22, act of May 21, 1885), which prohibited the manufacture and sale of oleomargarine.   The Pennsylvania court held that the statute was valid as within the police power of the state, and the conviction of the defendant under it was affirmed.   He brought a writ of error and the case was argued in the Supreme Court of the United States, it being alleged that the act violated the provision of the federal Constitution in that it deprived the defendant of his liberty or property without due process of law, and that it denied to him the equal protection of the laws. The federal Supreme Court held that no right secured to the defendant by the federal Constitution was violated by the act in question, and the judgment of the Supreme Court of Pennsylvania was affirmed.

A statute, very similar to the one in question, was condemned by this court in *People* v. *Marx* (99 N. Y. 377). As that was a decision in favor of a right claimed under both the federal and state Constitutions, no review thereof is provided for in the Supreme Court of the United States, and our decision, therefore, is necessarily final.

On looking carefully over the opinion of Mr Justice HARLAN, pronounced in the *Powell Case*, we find nothing therein which is decisive of the question now before us.   The case is decided upon the ground that the manufacture and sale of oleomargarine might be detrimental to the public health, because it might be manufactured of ingredients that are injurious to health, and the fact that the particular portion offered for sale by defendant might have been proved not to contain any such ingredients was entirely consistent with the possibility or probability that most kinds of oleomargarine butter did contain them.   It was then stated that it was for the legislature, under such circumstances, to decide whether it was not the best way, in order to prevent the manufacture and sale of oleomargarine containing such unhealthful ingredients, to absolutely prohibit the manufacture and sale of all oleomargarine.   The same may be said as to *Mugler* v. *Kansas*

Statement of case.

(123 U S. 623), for that was decided by the application of the police power to legislation upon the subject of intoxicating liquors, which is not in the least like the case under review. Upon a full consideration of this act we are entirely persuaded of its invalidity, and we must decide accordingly.

The judgment of conviction should be reversed and the defendant discharged.

All concur.

Judgment reversed.