. The People of the State of New York, Respondent, *v.* Anthony Girard, Appellant.

*The " Vinegar Act," chapter 515 of 1889 — proof of its violation — constitutionality of the prohibition of any coloring matter — action for penalty, against one of several joint offenders.*

By force of the provisions of section 8 of the " act to prevent deception in sales of vinegar " (Laws of 1889, chap. 515), it is not necessary for the plaintiff, in an action brought by the State Dairy Commissioner in the name of the People to recover the penalty provided by section 7 for a violation of preceding sections of the act, to elect under which section a recovery shall be had, but it is sufficient to sustain a recovery, both on the trial and on appeal, if the case made at the trial presents a violation of any of the provisions found in sections 1, 2, 3, 4 or 5 of the act.

The provision of section 4 of said act, that "no person shall manufacture, produce, sell, keep for sale, or offer for sale, any vinegar which shall contain * * * any artificial coloring matter," is valid as an exercise of the police power of the Legislature to protect the public health, and is not in contravention of the provision of the Constitution of the State of New York, that no person shall be deprived of life, liberty or property without due process of law.

Where the act has been violated by co-partners in business a several action for penalties may be maintained against one of the offenders, without joining his partners with him. (So held in an action where no defense of defect of parties was stated in the answer.)

The Legislature has power, under the Constitution, to pass a law forbidding the sale of vinegar which contains any artificial coloring matter, although such

coloring matter may neither render the vinegar unwholesome nor tend to deceive a purchaser.

APPEAL by the defendant, Anthony Girard, from a judgment of the Supreme Court, entered in the office of the clerk of Oneida county on the 16th day of February, 1893, upon a verdict in favor of the plaintiff directed by the court at the Oneida Circuit for one penalty mentioned in the complaint.

Plaintiff's complaint states that the Dairy Commissioner prosecutes this action in the name of the People to recover a penalty in pursuance of the provisions of chapter 515 of the Laws of 1889, entitled "An act to prevent deception in sales of vinegar," and charging the New York State Dairy Commissioner with its enforcement, passed June 15, 1889. The complaint alleges " That the defendant, on or about the 17th day of March, 1892, at his store or place of business in the city of Utica, * * * did, in violation of sections one, two, three, four and five of the act before referred to, and in contravention of the letter and spirit thereof, at the time and place aforesaid, sell and deliver, keep for sale and delivery, as and for cider vinegar, a compound or mixture which was not cider vinegar, nor was the same made from pure apple juice, which did not have or contain an acidity equivalent to the presence therein of at least four and one-half per centum, by weight, of absolute acetic acid, and said compound and mixture so sold as and for cider vinegar as aforesaid, did have and contain less than four and one-half per centum, by weight, of acidity, and did contain less than two per centum, by weight, of cider vinegar solids upon full evaporation over boiling water, and the mixture and compound so sold and delivered, offered for sale and kept for sale by the defendant at the time and place aforesaid, as and for cider vinegar, was made and produced in imitation or resemblance of cider vinegar, but said compound or mixture was not cider vinegar, nor was the same made from pure apple juice; and said mixture and compound so sold and delivered, offered for sale and kept on sale by the defendant at the time and place aforesaid contained a preparation of sulphuric acid and other deleterious substances injurious to health, with artificial coloring matter to color the same in imitation and resemblance of pure cider vinegar; and on the barrel from which the same was drawn, sold and delivered, and in which the compound was kept,

stored ready for sale, was branded with the name of 'Williams Bros. & Charbenneau,' doing business at 'Detroit, Michigan,' with the words 'Amber Colored Vinegar, 46 gal.,' in contravention of the statute in such case made and provided, and the compound aforesaid was not cider vinegar, nor was the same made from pure apple juice."

The answer of the defendant contained simply a denial of "each and every allegation in said complaint contained." When plaintiff rested the defendant moved for a nonsuit "on the ground that no cause of action has been made out by the evidence." The motion was denied and the defendant excepted. At the close of the evidence plaintiff asked for a direction of a verdict "for one penalty under section two and the last clause of section four of the Vinegar Act." Defendant moved to dismiss the complaint "On the ground that the facts proved do not establish a cause of action against this defendant, in that the cause of action, if any, appears to be against the defendant and John Geronimo jointly, as partners, and cannot be enforced against this defendant individually, until the partnership assets are exhausted." To that motion the court replied, "There is no allegation in the answer of defect of parties. I deny the motion to dismiss the complaint;" to that the defendant took an exception. Thereupon the court stated its views of the case, and intimated an intention to order a verdict for the People of one penalty for $200. The defendant thereupon took an exception. Then the defendant asked "to go to the jury on the evidence under section two of the act, as to whether or not the defendants sold or offered for sale vinegar in imitation or semblance of cider vinegar, which is not cider vinegar;" the request was refused and the defendant took an exception. The defendant then asked the court "to instruct the jury that that part of section four relied upon for the direction of a verdict, to wit, the prohibition of an artificial coloring matter in that section, is unconstitutional;" the court refused and the defendant took an exception. Thereupon the defendant asked "to go to the jury upon all of the evidence in the case as to the liability of the defendant;" it was refused and an exception taken.

*Miller, Fincke & Brandegee,* for the appellant.

*Risley & Robinson* and *Henry M. Love,* for the respondent.

Hardin, P. J.:

Manifestly the Legislature of 1889, in the passage of chapter 515 of the laws of that year, assumed to exercise its police power. The title of the act is as follows : " An act to prevent deception in sales of vinegar, and charging the New York State Dairy Commissioner with its enforcement." An evil practice was existing in the State at the time of the adoption of the act, and deleterious substances were being used in the manufacture of vinegar, substances which were detrimental to the health of the people consuming the impure and deleterious article being manufactured and sold and used to the detriment of the health of the citizens of the State. Evidently the intention of the Legislature was, through its police power, to protect the citizens of the State. The act, after containing certain prohibitions and restrictions, in its 6th section contained the following provision : " Whoever, by himself or another, violates any of the provisions of any of the foregoing sections shall be guilty of a misdemeanor, and, upon conviction, shall be punished by a fine of not less than fifty dollars nor more than one hundred dollars." Then follows the 7th section, which provides as follows : " Section 7. If any person, by himself or another, shall violate any of the provisions of sections one, two, three, four or five of this act, he shall, in addition to the fines and penalties herein prescribed for each offense, forfeit and pay a fixed penalty of two hundred dollars for each offense. Such penalties shall be recovered, with costs, in any court of this State having jurisdiction thereof, in an action to be prosecuted by the New York State Dairy Commissioner or any of his assistants in the name of the People of the State of New York." Then follows an important provision relating to the proceedings in the prosecution or in a suit for penalty found in section 8 of the act, which is as follows : " The prosecution shall not be compelled to elect, in any trial for the misdemeanors or suit for the penalties for the violation of sections one, two, three, four or five, where the indictment, information or complaint charges a violation of any two or more of such sections, between the charges or counts under such different sections." Applying this rule given by the statute, it was not necessary that the plaintiff should elect under which section a recovery of the penalty sought should be had ; it was sufficient for the trial, and it is sufficient here, if the case made at the trial pre-

sents a violation of any of the provisions found in sections 1, 2, 3, 4 and 5 of the enactment. The learned trial judge rested his conclusion upon the evidence, which, in his opinion, established a violation of section 4 of the act. That section provides that " No person shall manufacture, produce, sell, keep for sale, or offer for sale any vinegar which shall contain any preparation of lead, copper, sulphuric acid, or other ingredients injurious to health, or any artificial coloring matter." The evidence produced at the trial quite satisfactorily established the fact that the defendant kept for sale, offered for sale, and sold vinegar, so called, containing " artificial coloring matter." We think there was no conflict in the evidence upon that subject. Indeed, in the argument of the learned counsel for the appellant it is assumed that the evidence established that fact; and he also assumes that the prohibition "is absolute, and without regard to whether it causes the product to resemble cider vinegar, or unmistakably distinguishes it from such vinegar." We think the provision was inserted for the purpose of preventing " deception in sales of vinegar," and to protect the public health, and that the provision is valid, and is within the police power of the Legislature.

In *People* v. *West* (106 N. Y. 296) ANDREWS, J., said : " It is the province of the Legislature to determine, in the interest of the public, what shall be permitted or forbidden, and the statutes contain very many instances of acts prohibited, the criminality of which consists solely in the fact that they are prohibited, and not at all in their intrinsic quality." The general scope of the act was " to prevent deception in sales of vinegar," as appears by the title of the act. We think the provision of section 4, which is relied upon by the People to sustain the recovery, is valid, and that its terms are supported by the principles laid down in *People* v. *West* (*supra*) and in *People* v. *Arensberg* (105 N. Y. 123).

In *People* v. *Gillson* (109 N. Y. 389) it was held, viz. : " While it is for the Legislature generally to determine what laws and regulations are needed to protect the public health and serve the public comfort and safety, and the exercise of its discretion in this respect is not the subject of judicial review, yet a statute, to be upheld as an exercise of the police power, must have some relation to those ends." We think the statute before us very clearly has " some relation to those ends," and that the statute before us is quite distinguishable

from the one under consideration in *People* v. *Gillson (supra)*. It was for the Legislature to say whether the insertion of any "coloring matter" in vinegar was calculated to "baffle ordinary inspection or whether it involves such danger to the public health as to require, for the protection of the People," its entire prohibition, and it was for the Legislature to say whether public policy required from it the exercise of its police power. The Legislature having determined those questions and inserted the prohibition found in the last part of section 4 in the exercise of such power, we are inclined to the opinion that the clause of the act under discussion is constitutional and valid. (*Powell* v. *Pennsylvania*, 127 U. S. 678.)

(2) We think the defendant cannot escape liability for the penalty given by the statute for the reason that the suit was brought against him alone and not against him and his supposed partner. There was no defense of defect of parties stated in the answer. *First.* Section 7 provides: "If any person, by himself or another, shall violate any of the provisions of sections one, two, three, four or five of this act, he shall * * * forfeit and pay a fixed penalty of two hundred dollars for each offense."

In *Palmer* v. *Conly* (4 Den. 378) it is said: "The rule at common law is universal that every crime, as far as respects the guilt and punishment of, the parties engaged in the preparation of it, is several; and that if two or more persons concur in the commission of an offense, each offender is liable to a several punishment. This principle extends to statute offenses as well as to those which are punishable by the common law; and in general there is no distinction in the application of it between the higher kinds of punishment and fines or mere pecuniary penalties." The foregoing views, if adopted, lead to an affirmance.

Judgment affirmed, with costs.

MERWIN, J.:

I concur in affirmance.

MARTIN, J.:

As I understand this case there is but a single question involved, which is the constitutionality of that part of section 4 of chapter 515 of the Laws of 1889 which provides that "No person shall manufacture, produce, sell, keep for sale or offer for sale any vinegar which shall contain * * * any artificial coloring matter."

The action was to recover a penalty for selling vinegar in viola-tion of what is known as the "Vinegar Act" (Laws 1889, chap. 515). The court directed a verdict for the plaintiff for $200, and expressly refused to submit to the jury the question whether the vinegar sold was in imitation or semblance of cider vinegar, although it said that under the evidence that was a question of fact for the jury. The effect of this ruling was to hold, as a matter of law, that although the vinegar sold was neither unwholesome nor calculated to deceive a purchaser thereof as being in imitation or semblance of any other article of the kind, still, the mere fact that it contained artificial coloring rendered the defendant guilty of a crime, and liable to a penalty of $200.

If the portion of the section above quoted is not in contravention of the provision of the Constitution which provides that no person shall be deprived of life, liberty or property without due process of law, it is practically admitted that the judgment is proper and should be affirmed. Thus we are required to determine whether the Legis-lature had power, under the Constitution, to pass a law forbidding the sale of vinegar which contained any artificial coloring matter which neither rendered it unwholesome nor tended to deceive a purchaser. While, generally, it is for the Legislature to determine what laws are required to protect and secure public health, comfort, safety and the welfare of society, yet, under the guise of police regulations it cannot arbitrarily infringe upon personal or property rights, and its determination as to what is a proper exercise of the power is not final or conclusive, but is subject to the scrutiny of the courts. The Legislature cannot properly pass an act which is ostensibly to protect the public health, but which does not relate to or is inappropriate for that purpose, and thereby destroy the property or interfere with the rights of an individual. The right of liberty secured by the Constitution includes the right of an indi-vidual to adopt and follow such pursuits not injurious to the com-munity as he sees fit, and a legislative enactment which prohibits such an industry, when not injurious to the community or fraudu-lently conducted, is not constitutional. (*Matter of Jacobs*, 98 N. Y. 98; *The People* v. *Marx*, 99 id. 377; *The People* v. *Arensberg*, 103 id. 388; S. C., 105 id. 123; *People* v. *Gillson*, 109 id. 389.)

In the *Jacobs* case Judge EARL said: " Generally, it is for the

Legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient and appropriate to accomplish these ends the exercise of its discretion is not subject to review by the courts. But they must have some relation to these ends. Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the Legislature is not final or conclusive. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the courts to scrutinize the act and see whether it really relates to and is convenient and appropriate to promote the public health. It matters not that the Legislature may in the title to the act, or in its body, declare that it is intended for the improvement of the public health. Such a declaration does not conclude the courts, and they must yet determine the fact declared and enforce the supreme law."

In the *Marx* case it was held that the provision of the act of 1884 prohibiting the manufacture or sale as an article of food of any substitute for butter or cheese not produced from pure, unadulterated milk or cream, is unconstitutional inasmuch as the prohibition is not limited to unwholesome or simulated substances, but absolutely prohibits the manufacture or sale of any compound designed to be used as a substitute for butter or cheese, however wholesome, valuable or cheap it may be, and however openly and fairly the character of the substitute may be avowed and published.

In the *Arensberg Case* (103 N. Y. 388) the court held that in order to sustain an indictment under the provision of the act of 1885 prohibiting the manufacture or sale of any article " not produced from unadulterated milk or cream from the same," which is " in imitation or semblance of or designed to take the place of butter," it must be made to appear that the article manufactured was, by the use of ingredients, not necessary or essential to the article itself, made in imitation or semblance of butter, and that the manufacture of an article simply " designed to take the place of butter," is not an offense, and so much of the provision is unconstitutional.

In the same case (105 N. Y. 123) it was held that the provision of the act of 1885 " to prevent deception in the sale of dairy products,"

which prohibits the manufacture or sale of any product not made from unadulterated milk or cream, but made " in imitation or semblance " of dairy butter, is constitutional; that the producers of butter from animal fats or oils, although the product may be wholesome, nutritious and suitable for food, and so the manufacture and sale thereof may not be prohibited, have no constitutional right to resort to devices for the purpose of making their product resemble dairy butter, and the Legislature has power to enact such laws as it may deem necessary to prevent the simulated article being put upon the market in such form and manner as to be calculated to deceive ; that the statutory prohibition is aimed at a designed and intentional imitation of dairy butter in manufacturing the new product and not a resemblance in qualities inherent in the articles themselves and common to both, and that the sale of an article known to the vendor to be oleomargarine to which a coloring matter, not injurious to health, had been added, which was not essential to the manufacture of the article, but resorted to solely for the purpose of making it resemble the most valuable kind of dairy butter, was a violation of the act and justified a conviction on an indictment under it ; and this although the defendant offered it for sale and sold it as oleomargarine. It was also intimated in that case that the Legislature has power to prohibit the coloring of winter dairy butter for the purpose of enhancing its price by making it resemble summer dairy butter.

In the *Gillson* case it was held that the provision of the Penal Code prohibiting the sale or disposal of any article of food, or any offer or attempt to do so upon any representation or inducement that anything else will be delivered as a gift, prize, premium or reward to the purchaser, is unconstitutional and void ; that it is violative of the provision of the State Constitution securing to every person liberty and property unless he is deprived thereof by due process of law, and not valid as a proper exercise of the police power of the State, or as a health law or regulation of trade in food, to prevent the adulteration thereof.

In applying the doctrine of these cases to the question under consideration, it must be borne in mind that whether the jury would or would not have been justified in finding the defendant guilty of sell-

ing vinegar in imitation or semblance of cider vinegar, is not before us. As the court held, that question was clearly for the jury. Under the evidence there is no doubt but that the vinegar sold was perfectly wholesome, and the substance used in coloring was inoxious and harmless. Hence, as we have already seen, the only question is whether, where an article of food in general use is wholesome and healthful, is not made or sold in semblance of any other article, so that a purchaser is neither deceived nor furnished with that which is unwholesome, the Legislature can pass beyond that limit and prevent the selling of it, solely because it contains artificial coloring matter.

The principle of the authorities cited tends to sustain the contention of the appellant, that the Legislature, so far as it attempted to make the mere act in selling vinegar in which there was an artificial coloring matter a crime, has exceeded its constitutional power. And yet, upon examining the dissenting opinion in the case of *People* v. *Cipperly* (37 Hun, 324), which was adopted by the Court of Appeals (101 N. Y. 634), wherein it was held that the Legislature had power to pass an act declaring all milk to be adulterated which did not contain a certain per centum of milk solids and fat, even though it was in fact unadulterated, and also considering the fact that coloring matter was not a necessary or essential ingredient of the vinegar sold in this case, I am led to doubt the correctness of the appellant's contention. As every presumption is in favor of the constitutionality of legislative acts, and a case should be practically free from doubt before an act of the Legislature should be declared unconstitutional, I am disposed to concur in the conclusion that the judgment should be affirmed.

Judgment affirmed, with costs.