## PEOPLE v. BIESECKER.

(Supreme Court, Appellate Division, First Department.  March 8, 1901.)

1. PLEADING—DEMURRER—ADMISSION OF FACTS—CONSTITUTIONAL QUESTION— VALIDITY OF STATUTE.

A demurrer to a complaint to recover a statutory penalty, while admitting the truth of the material allegations, does not admit legal conclusions to be drawn from the facts or conclusions of law pleaded, and hence the question as to whether the statute under which the complaint is framed is constitutional may be properly raised by demurrer.

2. CONSTITUTIONAL LAW — FREEDOM OF CONTRACT — AGRICULTURAL LAW — VALIDITY.

Agricultural Law, § 27, as amended by Laws 1900, c. 534, prohibiting the sale of any butter or cheese product containing a preservative, except salt, and spirituous liquor in cheese, and sugar in condensed milk, and prohibiting the sale of any preserving substances to be so used, and providing a penalty therefor, is unconstitutional, as an improper restraint on personal liberty to sell articles of commerce, and is therefore void.

3. SAME—POLICE POWER—HEALTH—PURPOSE OF STATUTE.

The act is not sustainable as a proper exercise of police power for the preservation of public health, since it does not appear from the statute itself that that was the purpose for which it was enacted.

Appeal from trial term.

Action by the people against John S. Biesecker to recover a penalty for selling a preservative to be used in the manufacture of butter. From an order sustaining a demurrer to the complaint (68 N. Y. Supp. 134), plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Ellis S. Aldrich, for appellant.
Herbert R. Limburger, for respondent.

McLAUGHLIN, J.   This action was brought to recover a statutory penalty on the ground that the defendant had violated section 27 of the agricultural law, as amended by chapter 534 of the Laws of 1900, by selling a substance called "Preservaline," with the intent that the purchaser should mix it with butter made from milk or cream, and then sell the same.

The specific allegation of the complaint as to the sale is "that * * * on the 27th day of June, 1900, at his store, No. 59 Murray street, borough of Manhattan, city of New York, the defendant * * * did sell a substance, preparation, or material called 'Preservaline,' which was declared by him to be * * * a preservative of butter and other dairy products; that said substance, preparation, or matter called 'Preservaline' is a preservative, and is not salt to be put into butter or cheese, and is not spirituous liquors to be put into club or fancy cheese, and is not sugar to be put into condensed milk; that the defendant * * * did sell the said substance, preparation, or matter with the intent and recommendation that the purchaser should manufacture it, mix or compound it with, or add it to, natural milk or cream, and other dairy products, and then sell said dairy products containing the said preservative"; that such sale was in violation of and contrary to the section of the law above

referred to, and by reason thereof the plaintiff was entitled to recover the penalty provided in section 37 of the same law, as amended by chapter 435 of the Laws of 1899. Judgment was demanded for the sum of $100, with interest from the date of the commencement of the action. The defendant demurred to the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained, and from the judgment entered the plaintiff has appealed. By demurring the defendant, of course, admits the truth of the material allegations of the complaint; but he does not admit the legal conclusions to be drawn from such facts, or the conclusions of law pleaded. The real question presented, therefore, is whether section 27 of the agricultural law, as amended by the act of 1900, is constitutional. So much of this section as is involved in the subject-matter of the litigation reads as follows:

"No person shall sell or offer or expose for sale, any butter or other dairy products containing a preservative, but this is not to be construed to prohibit the use of salt in butter and cheese, or spirituous liquors in club or other fancy cheese or sugar in condensed milk. No person or persons, firm, association or corporation shall induce or attempt to induce any person or persons to violate any of the provisions of the agricultural law. Any person, firm, association or corporation selling, offering or advertising for sale any substance, preparation or matter for use in violation of the provisions of the agricultural law shall be guilty of a violation of this act."

The act further provides (section 37, as amended by chapter 435 of the Laws of 1899) that any person violating the provisions of the section quoted incurs a penalty not exceeding $100.

There is no doubt that the police power of the state may not only be used to protect the public health, but to prevent a fraud upon the people of the state, and that necessary statutes may be passed for that purpose; but, when such statutes are passed, they must, either in their title or in the body of the act, indicate the purpose sought to be accomplished. People v. Girard, 145 N. Y. 105, 39 N. E. 823. The rights of property cannot be invaded, interfered with, or destroyed, under the pretense of a police regulation for either of the purposes mentioned, unless it appears from the statute itself that that is the purpose of it. In re Jacobs, 98 N. Y. 109; People v. Gillson, 109 N. Y. 390, 17 N. E. 343. And it is not within the power of the legislature, under the pretense of exercising the police power of the state, to enact laws not necessary to the preservation of the health and safety of the community, or to prevent fraud upon the people, and which will destroy property or be oppressive and burdensome to the citizens of the state. Personal liberty cannot be interfered with, any more than the property of the citizen can be destroyed, in this way. In the exercise of this power, it has been held that the legislature, to prevent fraud and deception, has the right to prohibit the sale of a substance colored in such a way as to resemble butter made from milk and cream (chapter 183, Laws 1885; People v. Arensberg, 105 N. Y. 123, 11 N. E. 277; Same v. West, 106 N. Y. 293, 12 N. E. 610), and, to protect the public health, that milk shall not be sold below a certain standard (People v. Cipperly, 37 Hun, 324, s. c. 101 N. Y. 634, 4 N. E. 107), and that vinegar shall not be sold which contains any artificial coloring matter (People v.

Girard, supra). But can the statute here under consideration be said to have been passed to prevent either one of the objects named? The act itself does not indicate any such purpose, and there is nothing in the complaint from which even an inference to that effect can be drawn. It will be observed that it is not alleged that "Preservaline" is injurious to the public health, or that its use, when mixed with butter, milk, or cheese, changes their appearance in any way, or that by such use any one will be deceived. The name itself would seem to indicate—and it must be considered in its ordinary sense—that it is not injurious to the public health. The word "preservative," as defined in the Century Dictionary, is: "That which preserves anything; which tends to keep safe and sound, or free from injury, corruption, or decay; a preventive of damage, decomposition, or waste." And in the Standard Dictionary: "That which keeps safe or tends to preserve; that which has power to keep safe or sound; a safeguard." And in Webster's Unabridged Dictionary: "That which preserves or has the power of preserving; that which tends to secure from injury, destruction, decay, or corruption; a preventative of injury or decay." And in Webster's International Dictionary: "That which preserves or has the power of preserving; a preservative agent."

In People v. Marx, 99 N. Y. 377, 2 N. E. 29, the court, in holding that a statute passed to prohibit the sale of oleomargarine was unconstitutional, said:

"It appears to us quite clear that the object and effect of the enactment under consideration were not to supplement the existing provisions against fraud and deception by means of imitations of dairy butter, but to take a further and bolder step, and, by absolutely prohibiting the manufacture or sale of any article which could be used as a substitute for it, however openly and fairly the character of the substitute might be avowed and published, to drive the substituted article from the market, and protect those engaged in the manufacture of dairy products against the competition of cheaper substances capable of being applied to the same uses, as articles of food."

What was said in that case is applicable to the statute now under consideration. Without a suggestion, so far as the statute itself is concerned, either to the title or in the body of the act, that its purpose is to protect the health of the people or to prevent fraud being practiced upon them, it seeks to prohibit the use of a substance, no matter how valuable it may be, or the extent of its utility; and this we do not believe that the legislature had the power to do. If it could, then it could prohibit the use of any preservative in butter, milk, or cheese. It is thought by not a few people that salt not only preserves, but actually adds to the quality of, butter; and it may not be entirely optimistic to assert that, with our increased knowledge, another substance may yet be discovered which will preserve and add to the quality of butter even to a greater extent than salt does, and if such substance should be discovered, and it were not prejudicial to the public health, no one would seriously contend that the legislature could prohibit its sale or use.

For these reasons, we are of the opinion that the trial court was right in holding that the statute referred to is unconstitutional, and for that reason the judgment must be affirmed, with costs. All con-