Cox, J.
This case comes into court on a petition in error filed by the Railway Company to reverse a judgment of the court of common pleas, in sustaining a demurrer of the village of St. Bernard, to the answer of the Railway Company to the petition of said village, and rendering a judgment against said company and in favor of said village.
*590 In the court below, action was brought by the village to recover from the Railway Company the sum of one hundred and fifty dollars, with interest from the first day of July 1895, for money expended by the village, for placing electric lights along said railroad in the village of St. Bernard, and lighting the same.
Plaintiff in its petition alleges that it is a municipal incorporation organized under the laws of Ohio and situated in Hamilton county, Ohio, and that defendant is a corporation under the laws of the state of Ohio, and maintains and operates a steam railway in the village of St. Bernard, on the right-of-way owned by said defendant.
Plaintiff further says, that on the 2nd day of August, 1891, the counsel of the plaintiff duly passed an ordinance to provide for lighting the railway of .the defendant company within the limits of St. Bernard, in which ordinance the'’defendant company was required within twenty days fromthe delivery of a copy of said ordinance to the person having the management of the defendant’s railway, to erect and maintain poles, wires and electric arc lamps, of 2,000 candle power,and of the same kind and quality as were then being erected for use on the public streets of said village, and specifying the points on said railroad on which said lights should be erected; that on the 8tb of August, 1891, notice of the requirement to light said railway was given, by serving on M. E. Ingalls, the president of said Railway Company, a true and correct copy of said writing and said ordinance; that the defendant company neglected and failed for more than twenty days after the receipt of said notice,to erect said poles and lights, or to do said lighting in conformity with the provisions of said ordinance; that on the 6th day of-September, 1891, the plaintiff corporation passed a resolution directing the board of water works and electric light trustees of said village, to erect said poles at the points aforesaid,and do the lighting as required in said or *591 dinance at the expense of the defendant company; that pursuant to said ordinance and resolution, said village,through its board of water works and electric lighting trustees, did erect and construct three electric lights, of 2,000 candle power each, at the points designated on the line of defendant’s railway within the village, and thus continued to light said railway as required by said ordinance,from January 1, 1895, to July 1, 1895, at the cost of said village of $50.00 for each lamp; and tha.t the defendant railway company has refused to. pay said sum or any part thereof, and thereupon, on the 19th of September, 1895, the village council passed .an ordinance assessing said sum of one hundred and fifty dollars, the expenses of lighting said railway,on the real estate and leasehold interests of defendant’s company in Hamilton county, Ohio, to pa'y the expense of lighting the defendant’s railway within said village; that upon the failure to'pay same within ten days, the same should be collected in the manner provided by law; that the defendant’s company have failed to pay said sum although mere than ten days have elapsed since the passage of the same, and the plaintiff prays judgment against the defendant for said amount and interest, and that the real estate and leasehold interests of the defendant company in Hamilton county may be appraised, advertised and sold, and the proceeds thereof applied to the payment of said judgment.
To this, the defendant answered, saying that the only authority of the plaintiff to pass the said pretended ordinance set forth in the petition,is under sections 2494, 2495, 2496, 2497 and 2498, of the Revised Statute? of Ohio; that the act under which said ordinance is passed, violates the constitution of the United States, to-wit:
“That ;t assumes to authorize cities and villages through which the defendant roads run, to lay upon the defendant a heavy burden without due process of law, in so much as it provides that the defendant may, without hearing or no *592 tice, be required to put up a certain designated kind of light, and that such light may be required to be kept and maintained at all hours, irrespective of the use made of the streets or crossings where such lights are required to be placed:”
“That said act fails to provide for notice and hearing,and that there are questions of fact under the constitution of the United States of which defendant is entitled to notice, a day in court and a hearing, upon the following questions, to-wit:
“1st. — 'Whether the placing of electric lights at a crossing is necessary to provide for the security and safety of citizens and other persons from the running of trains through said city or village,
‘‘2nd, — Whether the placing of electric lights at crossings will not render the head-lights useless, destroy their utility and render it impossible to operate its railway with safety to passengers and employes. '
‘‘3rd. — Whether the kind of light to be used at such crossings is such as can be used with reasonable safety, and suchas will conduce to the safety of passengers and employes.
‘'4th. — Whether it is necessary to maintain lights at all hours of the night, or only a certain lime before and after the arrival of trains.
‘‘5th.- — -Whether the lighting of a railway in a street at a point specified, is reasonable for the safety of the public,
‘'6th. — Whether the kind of light required by the ordinance of cities and towns passed under the authority of said act,is reasonable and suitable and necessary for the safety of persons using the streets and'crossings, ”
And for further answer defendant says:
‘‘It is an inter-state railroad engaged in transporting articles of commerce and passengers into, through, and from more than twenty states of the United States, and was so engaged at the time, said ordinance was adopted, and has been so engaged for more than ten years, and all its trains and locomotives which pass through the said village are used in drawing cars and trains, in which passengers and articles of commerce are transported from and through *593 the different states; that in order to enable the defendant to discharge its duties as a common carrier, it is indispensably necessary that all its locomotives should be provided with head-lights, and that they are so provided, and that it is indispensably necessary that the head-lights of its locomotives should cast a light on_the track in front of the train,and that such light should not be diminished,obscured or rendered ineffective, and that the safety of all passengers .transported by the defendant, of all employes engaged in operating its locomotives and trains, and of all property entrusted to it for transportation,imperatively requires that the light from the head lights of its locomotives should not be obscured, obstructed or diminished; that the placing or erecting of electric lights at the crossings in such ordinance specified and required, will ■ disable the defendant from safely and properly performing its aforesaid duty as a common carrer of inter-state freight and passengers; that the effect of such electric lights shall be to endanger the safety of all passengers carried by the defendant, and of all employes engaged in operating its locomotives and trains, and of all property entrusted to it for transportation,
“That the effect of such electric lights as are required by said ordinance, is to obscure, obstruct and in effect destroy the light of its locomotives, and if erected as required prevent the engineers and fireman in charge of defendant’s locomotives from seeing persons or objects on the track, and will render the head-lights upon the locomotives almost entirely useless and ineffective,and the defendant will thereby be incapacitated from safely and properly discharging its duties as a carrier as aforesaid; that the ordinance will be a great burden to the defendant in erecting and maintaining at great expense electric lights in various villages- through which the road runs; that the defendant will suffer great loss and injury in the operation of its road, to-wit: a loss of more than ten thousand dollars.
“That the erection and maintenance of said electric lights as required by said ordinance, will make the crossings unsafe and dangerous to all persons who pass over them; that they will tend to prevent persons about to cross over said crossings, from seeing or observing head-lights of approaching trains; that light from the head-lights of such *594 trains will be obscured and rendered more or less useless and ineffective; that the public safety or welfare will not be promoted by the erection of said electric lights; on the contrary, the danger to all persons using or passing said crossings will be greatly increased, and that as a consequence thereof, the liability of the defendant for injuries to persons at crossings will be greatly increased, and it will be put to great expense and costs in defending actions for personal injuries.”
To this answer of defendant the plaintiff filed a general demurrer, which was sustained by the court, and judgment rendered for the plaintiff, to which judgmeut defendant excepted.
As to the first answer claiming that the act of the legislature under which this ordinance was passed is unconstitutional, we think the claim of the defendant should not be sustained. Section 2494, which authorized the village to require the company to light its track, was before the Supreme Court of this state in the case of Railroad Company v. Sullivan,32 Ohio St., 152,and was held to constitute a reasonable exercise of police power and therefore constitutional, and this opinion was approved and re-affirmed by the Supreme Court in the case of The Cincinnati, Hamilton & Dayton R.R. Company v. The Village of Bowling'Green, Ohio,as reported in Vol. 39,of the Weekly Law Bulletin,p. 84, and in 57 Ohio St., 342-3, the court saying: ‘‘The power given by the legislature to a corporation to require the lighting of a railroad track, is a branch of the police power of the state.” And the court sustained the constitutionality of all sections referred to.
What laws and ordinance may be passed in the exercise of the police power of the state has been the subject of many decisions, a number of which have been cited by counsel for the defendant, In the case of The People v. Jackson, 9th Michigan, 235, the court says:
‘‘The powers which can only be justified on the speci *595 fic ground that they are police regulations,and which otherwise would be clearly prohibited by the constitution, can be ■such only as are so clearly necessary to the safety, comfort, or well-being of society, or so imperatively required by the public necessity as to lead to the rational and satisfactory conclusion that the framers of the constitution would not otherwise have adopted.”
In the Slaughter House Case, 16 Wallace, 36 and 37, the Court says:
“But under the pretense of prescribing a police regulation the state cannot be permitted to encroach upon any of the just rights of the citizen, which the constitution intended to secure against abridgement.”
And the Court of Appeals of New York, 98 N. Y. ,p. 98, 'says:
“The police power is not without its limitations and that in its exercise, the legislature must respect the great fundamental rights guaranteed by the constitution. If this were otherwise, the power of the legislature would be practically without limitation.
“-In the assumed exercise of the police power in the interest of the health, the welfare or safety of the public, every right of the citizen might be invaded and every constitutional barrier swept away. This doctrine is approved in 109 N. Y., 389.”
Judge Cooley, in his work on Constitutional Limitations, 6th Ed., 710, says: the limit to the exercise of the police power in these cases must be this:
“The regulations must have reference to the comfort, safety or welfare of society; they- must not be in conflict with any of the provisions of the charter, and they must not under pretense of regulation take from the corporation any of the essential rights and privileges which the charter confers; in short, they must be police regulations in fact, and not amendments of the charter and curtailments of the corporate franchise. The maxim sic utere tuo id alienum non laedas, is that which lies at the foundation of the *596 power, and to whatever enactment affecting the management and business of private corporations it cannot be fairly applied, the power itself will not be extended,”
The object of this law is evidently in the interest of the welfare and safety of the public, and in the exercise of the power given by the legislature to a municipal corporation, this object should be kept steadily in view,and the principle of the police power of the state must not be violated. In the Bowling Green case, 39 Law .Bulletin, 87, and in 57 Ohio St., 847, the Supreme Court say:
“Section 2495, among other provisions, requires the ordinance to specify the manner in which said railway should be lighted. This language seems broad enough to authorize the municipality to prescribe the kind of light to-be employed for that purpose, whether electricity, gas, or any other material or means that may be reasonably adopted to the purpose. The power to select the kind of light to be used can be exercised, of course, only when more than one kind is available, ”
And the courts say further, on the same page:
“Yet, as the power to compel a railroad company to light its track at all implies authority to require it to be efficiently done,it would seem necessarily to follow that within reasonable limits the power to prescribe the kind of light rests with the municipal authorities. They of course, in this respect, could not cast an unreasonable burden on the railroad company. Doubtless this ordinance would cast upon a railroad company an unreasonable burden if it prescribed an electric light when the municipality contained no electric plant or other convenient means of generating electricity; otherwise the municipality, large or small, through which the railroad might pass, could compel those who operate the road to erect a plant to generate the light.”
And on page 345, 57 Ohio St., Bowling Green case, the court say:
“Both reason and authority deny to a corporation clothed with such rights and powers and bearing such relation to the public, the power to arbitrarily fix the price at which *597 it will furnish light to those who desire to use it. If the parties could not agree upon price,they could appeal to the courts of the state and compel the municipality to furnish the lights at a reasonable price.”
It will-be seen by these decisions of the Supreme Court, that the exercise of the power conferred by this statute must be reasonable arid must not cast an unreasonable burden on the railroad company, otherwise the ordinance would be void; and while the municipality has the right to prescribe, in the first place, the kind of light and points where it may be placed within the limits of the village, yet ,it may not do so arbitrarily or unreasonably,and when it is contended by the railroad company that such acts are unreasonable and arbitrary, it is the duty of the courts to determine whether the regulation is a reasonable exercise of a power which is generally prohibited by the constitution. According to the maxim sic utere, etc., it being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which everyone may so use his own as not to injure others. Any law which goes beyond that principle, which undertakes to abolish rights the exercise of which involves an infringement of the rights of others, or to limit the exercise of rights beyond what is necessary to provide for the public welfare and the general security cannot be included in the police power of the government.
It is a governmental usurpation and violates the principles of abstract justice, as they have been developed under our public institutions, Tedeman on Police Powers, page 4. That it is the duty of the courts to pass upon the reasonableness of the acts of a municipal corporation requiring railroads to be lighted, seems to be assumed in the Bowling Green case by the Supreme Court without any question.
Now, the answer of the Railway Company to the peti *598 tion of the plaintiff sets up that it is an inter-state railroad, engaged in transporting articles of commerce and passengers into, and through more than twenty states, and its trains and locomotives that pass through this village are so used. That in order to discharge its duties, it is indispensably necessary that all its locomotives should be, and are provided with head-lights for the purpose of casting a light on the track in front of the train,and that such light should not be diminished, obscured,or rendered ineffective, and that the safety of all passengers transported by the railway and of all employes engaged in operating its locomotives and trains, and all property entrusted to it for transportation, requires that the light should not be obstructed, ■obscured or diminished, and that the placing or erecting of such electric lights at the crossings in the ordinance specified and required will disable the defendant from safely and properly performing its duty, and the effect of such electric lights will be to endanger the safety of all passengers carried by the defendant and all employes engaged in opera'ting its locomotives and trains, and on all property entrusted to it for transportation; that such electric lights will obscure, obstruct and in effect destroy the light of its locomotives, and will prevent the engineers and firemen in charge of defendant’s locomotives, from safely and properly dis•charging its duties as a common’ carrier, and will be a great burden to defendants in erecting and maintaining at a great expense and the road will suffer great loss and injury in the operation of its trains; that it will make the crossings unsafe and dangerous to all persons that pass over them, and they will tend to prevent persons about to cross over ■said crossings from seeing or observing the head-lights of .approaching trains,and the public safety or welfare will not be promoted by the erection of said electric lights; on the contrary, the danger of all persons using or passing said ••crossings will be greatly increased an/3 the road will be put *599 to great expense in defending actions for personal injuries,
While the municipality has the right to fix the place and kind of lights to be erected by the railroad company, in doing so it must exercise it with reference to the safety and protection of the public in crossing said railway, and so as not to interfere with the just rights and duties of the railway company in managing its trains and locomotives in passing through the village, as in the management of its locomotives and trains great care is required of the railway to so manage them as to protect - the lives of the passengers and the safety of the property entrusted to it for transportation. To do this, it is asserted by the defendants in the answer, it is necessary that head-lights be used upon the locomotives which will cast a light upon tho track in front of the train and if this light is obscured or diminished, the safety of passengers and property will be greatly endangered, and persons who cross said railroad will be prevented from seeing or observing head-lights of approaching trains.
The Supreme Court of Ohio, 10th Ohio St., p. 116, say, the operators of a railroad train have an unqualified right to carry a head-light upon the train at night whenever necessary for the safety of the lives and property embarked upon the trains; and upon page 120, the court says, “if it be shown to be necessary, it is the right and duty of the company to see to it that such light be then carried.”
While the Supreme Court has held in the Bowling Green case, vol. 57 Ohio St., p. 342-3, that the village has authority to prescribe the kind of light that shall be employed, and that,where the village has an electric plant, it is not unreasonable because it requires a railroad company to use in lighting its track the particular kind of lamp and illuminating material in use for lighting the streets of such city or village, yet the question as to the power of the light used did not seem to have been raised in the case. It does not appear in the facts of that case how many candle *600 power of electricity was afforded by each lampón the streets or on the railroad, but the opinion seems to turn upon the kind of light, whether electricity, gas, or other light which might be used by the village. It could hardly have been intended to decide that such light would be reasonable if the illuminating power of the lamps in the streets were so great that if used in a lamp upon the railroad track it would obscure the head-light upon a locomotive and render nugatory all the power of the employes of the railroad to manage the trains so as to protect the lives of the passengers and the safety of the property entrusted to them.
John T. Dye, S. O. Bayless, Harmon, Colston, Goldsmith & Hoadly, Attorneys for Plaintiff in Error.
F. M. Gorman, Attorney or Defendant in Error.
Now, in this case, the village has prescribed the light to be used on the railroad to be of 2,000 candle power.
This answer directly attacks the reasonableness of the ordinance fixing the kind of lights and the places where they should be put, and raises an issue which should be met by a reply of the plaintiff. If sustained by the proof, it would be an answer to the claim of the plaintiff,if its tendency would be to show that the ordinance in question, instead of being for the safety and protection of the public, will have the contrary effect. We think the demurrer to the second part of defendants answer should have been overruled in the court of common pleas, and this judgment should therefore be reversed, and the case remanded.