# LILLIAN KANNE v. SEGERSTROM PIANO MANUFACTURING COMPANY.[1]

July 12, 1912.

Nos. 17,659—(218).

**Act invalid.**

> Chapter 287, Laws 1911, an act to compel those offering special induce-ments to the public or to prospective purchasers or customers in trade to pay a certain amount of such inducement or offer in cash, if such prospective purchaser or customer so elects, in lieu of the sum promised in trade, and to provide a penalty for the failure to do so, *held* invalid.

Action in the district court for Waseca county by the guardian ad litem of Lillian Kanne to recover $75. From an order, Dickinson, J., sustaining defendant's demurrer to the complaint, plaintiff appealed. Affirmed.

*Moonan & Moonan,* for appellant.

*Reed & Swift,* for respondent.

HOLT, J.

The title of chapter 287 [p. 402] of the Laws of 1911 is: "An act to compel those offering special inducements to the public or to prospective purchasers or customers in trade, to pay a certain proportion of the amount of such inducement or offer in cash, if such prospective purchaser or customer so elects, in lieu of the sum promised in trade and to provide a penalty for the failure to do so."

Section 1 reads as follows: "That all persons, who shall offer special inducements to the public or prospective purchasers or customers in trade, or shall agree to credit such prospective purchasers or customers with a certain amount on the purchase price of any article or commodity that may be purchased, as the result of any drawing or the solution of any puzzle, problem or device, shall, if such prospective purchaser or customer so elect, pay to him or her in

[1] Reported in 137 N. W. 170.

cash, one-half the amount which such person agrees to allow such prospective purchaser or customer in trade or agrees to credit him or her on the purchase price of any article or commodity that might be purchased."

Section 2 provides that one who refuses to pay one-half in cash to a prospective customer who elects to take that instead of the inducement, shall be guilty of a misdemeanor.

The complaint alleged that in June and July, 1911, the defendant advertised an offer of a premium for the solution of a puzzle, publishing such advertisement in newspapers throughout the state; that plaintiff's solution of the puzzle was accepted by defendant as correct, and it duly issued to her the certificate for the premium offered, which consisted of an agreement upon the part of defendant to credit her as a prospective purchaser of any new piano in the store of said defendant the sum of $150, if she should buy the same. The certificate is in the following words:

"Purchase Check.

"Minneapolis, Minn., July 22, 1911.

"Pay to the order of Lillian Kanne $150.00. (One Hundred Fifty Dollars). Not transferable unless authorized by us. Only one check can be applied on any one piano.

"Void after Aug. 5, 1911.

"Segerstrom Piano Mfg. Co.,

"per V. E. Segerstrom.

"Good for the above amount toward the purchase of any new piano in our store."

It is further alleged that plaintiff elected to receive, in lieu of the credit of $150 upon the purchase of a new piano, $75 in cash under the terms of said law, and duly notified defendant of such election on July 29, 1911, but defendant refused to pay any part thereof. The court sustained a demurrer to this complaint, and plaintiff appeals.

If the statute above set out is not valid, the order should be affirmed; otherwise, reversed. The presumption of the validity of the law must be indulged in by courts until convinced beyond a doubt that it is invalid. The contention is that the law in question takes away from defendant the liberty guaranteed by the Federal and state Constitutions to carry on its legitimate business in a legitimate way. The claim is also that every person has the right to hold out inducements to prospective patrons, and if the statute arbitrarily provides that this inducement shall have a cash value, which the prospective patron may elect to take instead of the inducement, there is unlawful confiscation. It is contended that the constitutional guaranty of liberty to the individual is well defined in People v. Gillson, 109 N. Y. 389, 17 N. E. 343, 4 Am. St. 465, and applicable here, and embraces "the right, not only of freedom from servitude, imprisonment, or restraint, but the right of one to use his faculties in all lawful ways, to live and work where he will, to earn his livelihood in any lawful calling, and to pursue any lawful trade or avocation."

While the constitutional guaranty referred to secures the right to pursue one's legitimate calling, it is also true that certain callings may be regulated, and that methods employed in business dealings between men are not beyond the interference of the police power of the state. Where avocations or business methods affect the public health, safety, or welfare, the legislature may rightfully exercise its authority. And it must be conceded that laws may be directed against the perpetration of fraud on the public—for instance, the validity of laws in regard to labels showing ingredients of articles of merchandise, regulation of weights and measures, and like enactments are upheld as coming within the proper exercise of legislative power. Within the realm of public welfare, the police power of the state is vested in the legislature to enact laws which, in their effect, may restrain the individual liberty of action even in legitimate enterprises. It will also be admitted that it rests in the first instance with the lawmaking power to determine what enactment is necessary to promote public welfare and protect the public.

However, the public offense designated in this statute is not against holding out or giving the inducements mentioned therein, but against

refusing to pay one-half of the represented value of the inducements held out. If, then, it be conceded that the legislature may, for the protection of the public against fraud, regulate the methods of doing legitimate business, and forbid advertising or holding out such inducements as are likely to deceive, we fail to discover such purpose in this law. In terms it does not forbid the holding out of any inducement, no matter how liable it may be to defraud the public. Even drawings or lotteries are impliedly given a standing before the law, if such were possible, by permitting the one who might have drawn a prize to recover one-half of its represented value in cash. On every inducement of the kind mentioned in the act, which a merchant may hold out to the public, whether it has a tendency to defraud or deceive or not, or whether it is legitimate or otherwise, this law attempts to ingraft a contract which, if not complied with, subjects the merchant to a penalty.

The act does not purport to directly protect the public against fraudulent business methods. The prospective customers who are not keen enough to detect the fraud or deception that may be lurking in the method of holding out the inducements, or in the inducements themselves, but accept the same according to the terms, receive no protection from this law. Only the ones who are after something for nothing, so to speak, are assisted. It may be true that the enforcement of the law indirectly accomplishes prohibition of all efforts to attract trade by any of the inducements mentioned therein, for it is manifest that no one in business resorts to such inducements except to secure customers and trade. The tradesman is not a philanthropist in this matter, and is not seeking for an opportunity to confer a gift or concession to any one except one who becomes a customer, and then only in the manner proposed. So that, if the law compels him to pay out cash to one who elects not to do business with him, of course, he cannot hold out any inducement that may produce such undesirable result. But we are not justified in holding that the legislature intended in this indirect manner to absolutely prohibit a merchant from attracting customers and trade by the inducements designated in the act. We must assume that, if such had been the intention, apt language indicative thereof would have been employed.

And the same holds true if we look for an attempt to regulate a business method likely to defraud the public unless regulated. For there is no designation or definition of the methods that come under the ban of the law. The one who holds out inducements as a result of an unlawful drawing, or lottery, is in no worse position than one who offers a credit for the solution of a mathematical problem. No distinction is made between the plain, fair, and open inducement, devoid of all tendency to deceive, and the cunningly devised scheme designed to successfully ensnare even the veteran bargain hunter. We are constrained to hold that the act is not intended as a prohibition against holding out of the inducements therein mentioned, and therefore not prohibitory of that which perhaps might be prohibited, and, further, that it is not a valid regulation of that which might be subject to regulation. It follows that the legislature had no right to add the condition to the inducement on which the recovery herein is predicated.

Order affirmed.