## LIEN OF STATE BANKS UPON STOCK OWNED BY DEBTORS TO THE BANK.

Common Pleas Court of Hamilton County.

THE FIRST NATIONAL BANK OF NORWOOD V. WILLIAM WELLING HUNT AND THE MADISONVILLE DEPOSIT BANK.

Decided, 1914.

*Banks and Banking—Lien of a Bank Upon Stock Owned by One Indebted to it—Reason for a Statutory Provision Creating Such a Lien—Restraints Upon Directors and Stockholders—Section 9683.*

1. A bank organized under the laws of Ohio, and incorporated under the act of March 21st, 1851, known as the "free banking act," has a lien upon the shares of stock of its stockholders, issued and outstanding, for any indebtedness due from such stockholder to such bank, by virtue of Section 9683 of the General Code of Ohio, and this lien is superior to the lien of another creditor, although created more than two years prior to such stockholder becoming indebted to such bank.

2. There can be no lien in favor of a bank incorporated under the act of March 21st, 1851, upon any stock issued after June 7th, 1911, by virtue of Section 8673-15 of the General Code of Ohio, unless the right of such lien be stated upon the certificate of stock.

*William R. Collins,* for the plaintiff.
*Healy, Ferris & McAvoy,* for Wm. W. Hunt.
*Gideon C. Wilson* and *Stephen W. Jones,* for the bank.

GEOGHEGAN, J.

On January 8, 1908, the Madisonville Deposit Bank, a corporation formed under the act of March 21, 1851, known as "an act to authorize free banking" (49 Ohio Laws, 41), issued its certificate No. 82, for twenty shares of its capital stock, to Howard M. Hunt. On January 28, 1908, the said Howard M. Hunt executed his promissory note for $900 to the First National Bank of Norwood, Ohio, a national bank organized under the laws of the United States, and deposited said twenty shares as collateral security for the loan. This note was removed from time to time

and the indebtedness was finally assumed by William Welling Hunt, defendant herein, by the giving of his certain promissory note to the First National Bank of Norwood, Ohio, on November 18, 1912, in the amount of $850, which was the balance then due on said original note, and the said William Welling Hunt deposited as collateral security the said twenty shares of the Madisonville Deposit Bank stock. His authority to do this was evidenced by two papers, one under date of November 25, 1908, addressed to W. W. Hunt, and signed H. M. Hunt, wherein the said W. W. Hunt was authorized to use said certificate No. 82 as collateral security with the First National Bank of Norwood, Ohio, for any loan or renewal thereof that the said W. W. Hunt desired to make with said bank, and a second under date of November 20, 1912, addressed to the First National Bank of Norwood, Ohio, and signed by H. M. Hunt, as follows:

"Gentlemen: This is your authority for the transfer to the name of W. W. Hunt, the certificate of stock known as certificate No. 82 for 20 shrs. of the Madisonville Deposit Bank, Madisonville, O., issued in the name of H. M. Hunt and properly endorsed by him, and now held by you as collateral security for a loan of W. W. Hunt."

The note of November 18, 1912, signed by W. W. Hunt, becoming due and not being paid, the First National Bank of Norwood, Ohio, in accordance with an option contained in the collateral agreement, whereby the aforesaid twenty shares of stock were pledged, proceeded to sell stock through the agents of a broker of the city of Cincinnati, upon the stock exchange of said city. Said stock was sold and when the certificate was then presented for the first time for transfer upon the books of the Madisonville Deposit Bank, the Madisonville Deposit Bank refused to transfer it, claiming a lien by virtue of Section 3821-70, Revised Statutes of Ohio, now Section 9683 of the General Code of Ohio, which section was the original Section 11 of the act of March 21, 1851, referred to above. .

This lien was claimed by reason of a certain indebtedness of the said Howard M. Hunt to the Madisonville Deposit Bank, as evidenced by his promissory note of February 17, 1911, in the

sum of $879.60, payable to the said Madisonville Deposit Bank.

There is no evidence sufficient to justify any assumption that the said Madisonville Deposit Bank had any knowledge of the use that had been made of said stock with reference to the transactions of said Howard M. Hunt and W. W. Hunt with the First National Bank of Norwood, Ohio, and, therefore, the primary right which the plaintiff herein seeks to have enforced in this action, to-wit, a mandatory injunction requiring the said Madisonville Deposit Bank to transfer the stock on its books to the purchaser at the sale of said stock upon the Cincinnati Stock Exchange, depends upon whether or not Section 11 of the act of March 21, 1851, creates a lien upon this stock in favor of the Madisonville Deposit Bank; and further, if the first question is decided in favor of the Madisonville Deposit Bank, whether or not said Section 11 of said act is in conflict with the provisions of Article II, Section 28, of the Ohio Constitution, and Article I, Section 10, of the Constitution of the United States, in that its impairs the obligation of the contract between the plaintiff and the defendant, W. W. Hunt, as evidenced by the giving of the note and the collateral agreement.

As to the first proposition, there seems to be little difficulty in view of the history of that legislation originally known as "the free banking act." The original Section 11 of the act of March 21, 1851, 49 Ohio Laws, page 41, provides as follows:

"The capital stock of every company shall be divided into shares of fifty dollars each, which shall be deemed personal property, and shall only be assignable on the books of the company, in such a manner as its by-laws shall prescribe; each bank shall have a lien upon all stock owned by its debtors and no stock shall be transferred without the consent of a majority of the directors, while the holder thereof is indebted to the company."

This particular Section 11 of the act was carried into the Revised Statutes in identically the same language, as Section 3821-70, and said section was carried into the General Code as Section 9683, and as such it is now the law of Ohio and prescribes a limitation upon the transfer of stock in a banking company organized under the free banking act.

The Madisonville Deposit Bank was incorporated under said act on the 10th of January, 1907, and has been carrying on its business as such bank since that time.

Counsel for the plaintiff refer to Section 15 of the act of June 7, 1911, entitled "an act to make uniform the law of transfer of shares of stock in corporations" (102 Ohio Laws, 500), which Section 15 is now known as Section 8673-15 of the General Code, and which provides that:

"There shall be no lien in favor of a corporation upon the shares represented by a certificate issued by such corporation and there shall be no restriction upon the transfer of shares so represented by virtue of any by-laws of such corporation, or otherwise, unless the right of the corporation to such lien, or the restriction is stated upon the certificate."

The defendant contends that inasmuch as the certificate herein did not contain upon its face the restriction set forth in Section 9683, to-wit, that each bank shall have a lien upon all stock owned by its debtors and no stock shall be transferred without the consent of a majority of the directors while the holder thereof is indebted to the company, the Madisonville Deposit Bank can not now claim said lien and refuse to transfer the stock on its books to the purchaser at said sale.

However, in setting this up he overlooked Section 23 of the act of June 7, 1911, which expressly limits the application of the provisions of the act to certificates issued after the taking effect of the act, which was fixed at July 1, 1911.

This stock having been issued January 8, 1908, is not subject, therefore, to the provisions of Section 8673-15.

Therefore, it would seem that at the time this stock was deposited with the First National Bank of Norwood, Ohio, by the said Howard M. Hunt, the said bank took said stock with notice of the fact that there would be a lien thereon in favor of the Madisonville Deposit Bank for any indebtedness to said bank by Howard M. Hunt. Persons obtaining stock issued by banks incorporated under the free banking act are bound to take notice of the lien reserved by Section 9683, General Code, under the familiar principle that all persons are presumed to act with

knowledge of the general laws of the land, unless this section has been repealed by implication by Section 8673-15, General Code, a question which can have no effect upon the conclusion to be had herein.

As to the second proposition, that the said act is in contravention of the provisions of Article II, Section 28, Ohio Constitution, and Article I, Section 10, of the Constitution of the United States, inasmuch as it impairs the obligation and freedom of the contract, no authority is cited by counsel in support of this proposition, with the possible exception of *Palmer & Crawford* v. *Tingle*, 55 Ohio State, 423, wherein the mechanic's lien law of April 13, 1894 (91 Ohio Laws, 135, was declared unconstitutional upon the ground that it gave sub-contractors, etc., a lien on the property of the owner without requiring a notice on the part of such sub-contractors, etc., to the owner before he has paid to the head contractor the amount due him upon the contract as is now required. However, an examination of the opinion of the court throws considerable light upon the underlying principles which impelled the court to declare that law unconstitutional. On page 441 the court uses this language:

"The word 'liberty,' as used in the first section of the Bill of Rights does not mean a mere freedom from physical restraint or state of slavery, but is deemed to embrace the right of man to be free in the enjoyment of the faculties with which he has been endowed by his Creator, subject only to such restraints as are necessary for the common welfare. *People* v. *Marks*, 99 N. Y., 377; 52 Am. R., 34; *Bertholf* v. *O'Reilly*, 74 N. Y., 15; 30 Am. R., 323; *Matter of Jacobs*, 98 N. Y., 98; 50 Am. R., 636.

"Contracts and compacts have been entered into between men, tribes and nations during all time from the earliest dawn of history, and the right and liberty of contract is one of the inalienable rights of man, fully secured and protected by our Constitution, and it may be restrained only in so far as it is necessary for the common welfare, and the equal protection and benefit of the people. That such restraint of the right and liberty of contract is for the common public welfare, and equal protection and benefit of the people must appear, not only to the General Assembly, by force of popular clamor, or the pressure of the lobby, but also to the courts, and it must be so clear, that a court of justice in the calm deliberation of its judgment, may

be able to see that such restraint is for the common welfare and equal protection and benefit of the people. *People* v. *Gillison,* 109 N. Y., 389; 4 Am. St. Rep., 465.''

Then the court points out various statutes which impose restraints upon the liberty to contract, such as statutes against usury, statutes giving exemptions, and points out that such limitations are for the general welfare of the whole people and do not interfere with their equal protection and benefit.

Now in this case the object of this statute is plain to the court. · It is designed to protect depositors in banks from the consequences of improvident or dishonest loans to irresponsible stockholders. The state has given to a bank of this character its sanction and stamp of approval and by enacting stringent laws whereby the daily operations of the bank are inspected and governed, it has in a great measure tended to inspire confidence on the part of the public in the bank, and therefore it seems wise and proper that it should exact more security from a shareholder than of any other persons, especially in view of the well known fact that the shareholder is more familiar with the operations of the bank and has more means of securing money from the bank on his individual obligation than persons who are not so situated.

A provision similar to the one in question was discussed by Judge Thurman, in the case of *Conant et al* v. *Bank et al,* 1 Ohio State, 298, wherein, at page 304, he said:

''The intent of the act is to give the bank a double security where a stockholder is the debtor; first, the same security that persons not stockholders are required to give; secondly, a lien upon his stock. These are wise provisions, tending to protect the bank and the public against the consequences of improvident or dishonest loans to irresponsible stockholders. It is judicious and right to require more security of a shareholder than of another person; and giving a lien on his stock is only carrying out the principle that obtains in ordinary partnerships, that the interest of the partner is what remains after deducting his debts to the firm.''

The act he was discussing was the ''act to incorporate the State Bank of Ohio and other banking companies'' (43 Ohio

Laws, 24), wherein precisely the same lien as herein was granted.

And in *Downer's Admr.* v. *Bank,* Wright, 477, the Supreme Court, in discussing the provisions of the act creating the Zanesville Bank (30 Ohio Laws, 99), wherein a similar provision as the one in question was involved, says:

"Such lien is paramount for the public security, and should not be relinquished, without payment or other security."

And in *Bellevue Bank* v. *Highee,* 4 C. C., 222, the court discusses Section 9 of the act "to incorporate savings and loan associations (70 Ohio Laws, p. 40), and holds that under that act a board of directors have authority to make a by-law to the effect that no stockholder has the right to transfer stock without the consent of a majority of the board of directors until the indebtedness of the stockholder to the bank has been paid.

The principle herein involved, that is, the right to create a statutory lien of this kind, is recognized in *Stafford* v. *Banking Co.,* 61 Ohio State, 160, at 168.

Section 11 and 12 of the Free Banking Act were before the court in the case of *Franklin Bank* v. *Commercial Bank,* 36 Ohio State, 350, and while the provisions of Section 11 are not discussed in the opinion of the court, in no place is the constitutionality of Section 11 questioned or challenged.

In view of these authorities and the fact that the Legislature has in other and similar acts, both special and general, reserved the lien herein sought to be enforced by the Madisonville Deposit Bank upon shares of stock in the hands of stockholders who were indebted to the bank, it seems to me that it is a rather late day to question the constitutionality of this provision.

It is my opinion that provisions of this kind are wise and salutary; that they are designed for the purpose of restraining directors and stockholders in the bank from unwisely, improvidently or fraudulently making loans of the depositors' money to themselves and that whatever limitations may be placed upon the free disposition of stock issued by banks incorporated under this act in the hands of stockholders, they are completely overbalanced by the general good that is subserved by such restrictive provisions.

The mandatory injunction will be refused and the second and third causes of action in plaintiff's petition will be dismissed. As to the first cause of action, judgment may be had upon the note of W. W. Hunt, in favor of the First National Bank of Norwood, Ohio. Judgment will also be rendered in favor of the Madisonville Deposit Bank against Howard M. Hunt, for his indebtedness to said bank. The lien of the Madisonville Deposit Bank upon the said twenty shares of stock will be enforced, and such other orders will be made as are necessary to carry into effect the rights of the Madisonville Deposit Bank as against this stock, and all further orders as are necessary to protect the various rights of the parties hereto as they may exist in the light of the foregoing opinion.

---

## PROCEDURE FOR MODIFICATION OF A DECREE FOR ALIMONY.